UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.  ) | Criminal No. 19-cr-10345-DPW |
| ) | |
| DANA A. PULLMAN ) | |
| ) | |
| Defendant ) | |

UNITED STATES' RESPONSE TO
DEFENDANT'S MOTION FOR CLARIFICATION

The United States respectfully submits that the court should maintain the current conditions of release that require defendant Dana A. Pullman ("Pullman") to avoid any contact, direct or indirect, with potential witnesses in the case (who are not family members). Based on the nature of the charges in the indictment, there is a realistic and plausible concern that Pullman would continue to obstruct justice. Other than a temporary loss of communication, Pullman has also not demonstrated why the no-contact imposes an unnecessary burden or impacts his ability to mount a defense.

Relevant Background

On August 21, 2019, Pullman and his co-defendant Anne Lynch ("Lynch") were arrested on a criminal complaint charging wire fraud, honest services wire fraud, conspiracy to commit honest services wire fraud and obstruction of justice. At the defendants' initial appearance the same day, the court entered a release order which required Pullman to "avoid all contact, directly or indirectly, with any person who is or may be a victim or witnesses in the investigation or prosecution" including Lynch and potential witnesses identified by the government. (Docket Entry 9); 18 U.S.C.

§ 3142(c)(1)(B)(v)). At the government's request, the court made an exception for family members, including the defendant's spouse and brother-in-law.

On August 29, 2019, the government provided a list of fifty-one potential witnesses to the defendants' counsel, including the two individuals whom Pullman in his motion identifies as long-time friends, Massachusetts State Police ("MSP") Troopers Michael Sullivan and Timothy Gillespie. While Pullman was president of the State Police Association of Massachusetts ("SPAM"), both Sullivan and Gillespie were members of SPAM's governing Executive-Board ("E-Board").

On September 12, 2019, an indictment was returned that charges Pullman with, among other things, racketeering, racketeering conspiracy, and obstruction of justice. (Docket Entry 17). Relevant to the motion under consideration, the indictment alleges that both Pullman and Lynch sought to obstruct and impede the grand jury's investigation of this matter (paragraphs 60-62, 84-85, 97-100), and that Pullman carried out the racketeering conspiracy through not only fraud and deceit but through the intimidation of others (paragraph 67(c)).

Argument

The court should continue to require Pullman to avoid any contact with Sullivan and Gillespie. There is a particularized need for a stay-away order from these two particular witnesses, and Pullman has not shown why stay-away order imposes an unnecessary burden.

First, the Bail Reform Act ("the Act") clearly authorizes the court to release a defendant on the condition it has set: that Pullman "avoid *all* contact with . . . a potential witness who may testify concerning the offense" so long as that condition is "the least restrictive further condition, or combination of conditions, that ... will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B)(v)

(emphasis added).  Under the Act, the concept of public safety is given a broader construction than mere physical violence, and includes the dangers that the defendant might engage in criminal activity to the community's detriment.  See United States v. Jones, 2010 WL 4024927, at *3 (D.S.D. Oct. 13, 2010) (citing United States v. Trammel, 922 F.Supp. 527 (N.D. Okla. 1995); United States v. Williams, 565 F.Supp. 350 (N.D. Ill. 1983); and United States v. Miranda, 442 F.Supp. 786 (S.D. Fla. 1977)); see also United States v. Ploof, 851 F.2d 7, 12 (1st Cir. 1988) ("where there is a serious risk that a defendant, if released, would obstruct justice or intimidate witnesses, it could, in ordinary speech, reasonably be said that that person was a danger to the community").

Second, without the stay-away order, there is a particularized and more than plausible concern that Pullman may seek to obstruct justice.  The concern is not a generic one.  The charges in the indictment are serious and allege that as part of a multi-year racketeering conspiracy, Pullman sought to obstruct the grand jury investigation. That obstruction began after the grand jury began issuing subpoenas to SPAM for records.  Years of expense records went missing, and Pullman encouraged another witness in the case to falsely inform federal authorities that expense records were destroyed pursuant to a non-existent one-year document retention policy.  In addition to obstruction charges, the 52-page indictment outlines multiple instances where Pullman received bribes and kickbacks, defrauded outside companies, and as president of SPAM and a law enforcement officer operated SPAM as a racketeering enterprise.

To be sure, the government did not select Sullivan and Gillespie as potential witnesses simply because they are long-time friends of Pullman.  During the time that Pullman was SPAM's

president, both Sullivan and Gillespie were on the E-Board with Pullman and thus were percipient witnesses to the criminal conduct charged in the indictment.

Third, the stay-away order is not an unreasonable burden but instead a condition of release tailored to prevent a foreseeable harm to the community, the government's case, and an official court proceeding. Compare United States v. Pickel, 500 F. App'x 771, 772 (10th Cir. 2012) (upholding no-contact order between defendant and common-law wife who was mother of defendant's child). While not an ideal situation for any criminal defendant, a "no-contact provision is far less restrictive than pretrial detention" and in no way burdens the defendant's ability to prepare a defense. United States v. Vasilakos, 508 F.3d 401, 411 (6th Cir. 2007) ("The district court did not restrict defense counsel's ability to interview any potential witnesses, and the defendants failed to provide any evidence that their attorney's preparation was inhibited by a lack of specialized knowledge"). The defendant's solution – that he assure the court that he has no intention" of discussing the case with any potential witness – is unverifiable and unenforceable. Short of pre-trial detention, there is no other plausible or verifiable condition to ensure that social conversations do not stray into suggestions of witness tampering.

Finally, while the defendant offers that prior statements and/or testimony could alleviate the impact of obstruction of justice or witness tampering on government witnesses, the government counters that the opposite is true.[1]  Even if so, a plausible threat of obstruction of justice should not be considered to be non-existent simply because that witness could possibly impeached with prior sworn testimony.

---

[1] For this reason, the government has sought leave of court to submit further information about testimony and statements in this matter to the court *ex parte* and under seal.

## Conclusion

Accordingly, the government respectfully submits that the court should maintain the current stay-away order.

                    Respectfully submitted,

                    ANDREW E. LELLING
                    United States Attorney

By: /s/ *Neil Gallagher*
     Neil J. Gallagher, Jr.
     Kristina E. Barclay
     Assistant U.S. Attorney

Dated Submitted: September 17, 2019

## Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

By: /s/ *Neil Gallagher*
     Neil Gallagher
     Assistant U.S. Attorney