UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No.: 19-cr-10345-DPW |
| | ) | |
| v. | ) | |
| | ) | |
| DANA A. PULLMAN and | ) | |
| ANNE M. LYNCH, | ) | |
| Defendants | ) | |

## OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

Defendants Dana A. Pullman and Anne M. Lynch (collectively, Defendants) have moved to dismiss the Indictment on various grounds, including principally their contention that it does not adequately plead the crimes charged.   Their motions are without merit and should be denied.

A criminal indictment is required to plead only those facts necessary to provide defendants notice of the charges against them and to enable them to plead double jeopardy in the future.   The 138-paragraph Indictment in this case far exceeds that minimum requirement, setting forth considerable factual detail of Defendants' alleged efforts to enrich themselves through various forms of bribery and fraud.   Defendants' arguments to the contrary conflate the burdens of pleading and the proof required for conviction at trial and seek to impose heightened civil pleading standards that have no place in the criminal context.   Indeed, their claims of lack of notice are belied by the detailed legal-sufficiency arguments they make in the same breath. For those reasons, and the reasons set forth below, their motions should be denied.

## RELEVANT BACKGROUND

Defendant Dana Pullman (Pullman) was employed both as a Massachusetts State Police (MSP) Trooper and as the President of the State Police Association of Massachusetts (SPAM), a private association that acts as the exclusive bargaining agents for all members of the Uniformed

1

Branch of the Department of State Police.   Docket No. 17, ¶ 14.   Defendant Anne Lynch

(Lynch) was the owner of, and later a consultant to, SPAM's Lobbying Firm.   *Id.*, ¶¶ 11, 16.

The Indictment alleges that, "[a]s a law enforcement officer and the President of SPAM, Pullman

owed a fiduciary duty and a duty of honest services to SPAM, the [SPAM] Membership, and the

Commonwealth [of Massachusetts] to perform his job and official duties free from fraud, deceit,

and self-enrichment and to refrain from accepting, or agreeing to accept bribes and kickbacks."

*Id.*, ¶ 14.   The Indictment charges Defendants with personally enriching themselves through a

scheme of fraud, bribery, and kickbacks, and alleges three illicit payments Lynch made or caused

to be made to Pullman and his wife.[1]

 First, the Indictment alleges that Pullman, as the President of SPAM, negotiated a

settlement with the Commonwealth (the DOL Settlement) to include $350,000 as reimbursement

to SPAM for expenses.   *Id.*, ¶¶ 29-31.   After SPAM had paid the Lobbying Firm the entire

$350,000 that SPAM received from the Commonwealth, Lynch paid Pullman a bribe and

kickback in the amount of $20,000, which payment Pullman concealed from SPAM, the

Membership and the Commonwealth.   *Id.*, ¶¶ 31-37.   Count Four charges Defendants with

honest services wire fraud in violation of 18 U.S.C. § 1346 related to the DOL Settlement.   *Id.*, ¶

89.   The Indictment also charges that Defendants conspired to commit honest services wire

fraud.   *Id.*, ¶ 64 (Count One charging Racketeering Conspiracy including honest services wire

fraud), ¶¶ 69-71 (Count Two charging Racketeering, including Racketeering Act 1A alleging

---

[1] The Relevant Background includes only those Indictment allegations which are relevant to the
counts and racketeering acts that Defendants have moved to dismiss.

honest services wire fraud); ¶ 87 (Count Three charging Conspiracy to Commit Honest Services Wire Fraud and Wire Fraud).

Second, the Indictment alleges that Company A sought support from Pullman and SPAM for the sale of its product to the Commonwealth. *Id.*, ¶¶ 38-40. Pullman directed Company A to hire Lynch and the Lobbying Firm, in exchange for $5,000 paid by the Lobbying Firm to Pullman. *Id.* ¶ 46. Defendants purposely concealed the Lobbying Firm's payment to Pullman from Company A, and Company A would not have hired the Lobbying Firm had it known about Defendants' illicit arrangement. *Id.* ¶ 47. Count Five charges Defendants with wire fraud in violation of 18 U.S.C. § 1343 related to Company A. *Id.*, ¶ 91. The Indictment also charges that Defendants conspired to commit wire fraud. *See also id.*, ¶¶ 64 (Count One charging Racketeering Conspiracy including wire fraud), 69 and 75 (Count Two charging Racketeering, including Racketeering Acts 2A-2D alleging wire fraud related to Company A), 87 (Count Three charging Conspiracy to Commit Honest Services Wire Fraud and Wire Fraud).

Third, the Indictment alleges that Company B sought support from Pullman and SPAM for the sale of its product to the Commonwealth. *Id.*, ¶¶ 38-40. Pullman directed Company B to hire Lynch and the Lobbying Firm and arranged a meeting between an employee of Company B and a public official, in exchange for $5,000 paid by Lynch to Pullman. *Id.,* ¶¶ 48-52. Defendants purposely concealed Lynch's payment to Pullman from Company B, and Company B would not have hired the Lobbying Firm had it known about Defendants' illicit arrangement. *Id.* ¶ 53. Counts Six and Seven charge Defendants with wire fraud in violation of 18 U.S.C. § 1343 related to Company B. *Id.*, ¶ 93. The Indictment also charges that Defendants conspired to commit wire fraud. *See also id.*, ¶¶ 64 (Count One charging Racketeering Conspiracy

including wire fraud), 69 and 75 (Count Two charging Racketeering, including Racketeering

Acts 3A and 3B alleging wire fraud related to Company B), 87 (Count Three charging

Conspiracy to Commit Honest Services Wire Fraud and Wire Fraud).

## LEGAL STANDARD

An indictment must provide "a plain, concise and definite written statement of the

essential facts constituting the offense charged."   Fed. R. Crim. P. 7(c)(1).   "While detailed

allegations might well have been required under common-law pleading rules, they surely are not

contemplated by Rule 7(c)(1)."   *United States v. Resendiz-Ponce*, 549 U.S. 102, 110 (2007)

(internal citation omitted).   "An indictment need not say much to satisfy [Rule 7(c)(1)'s]

requirements—it need only outline 'the elements of the crime and the nature of the charge so that

the defendant can prepare a defense and plead double jeopardy in any future prosecution for the

same offense.'"   *United States v. Stepanets*, 879 F.3d 367, 372 (1st Cir. 2018) (quoting *United

States v. Guerrier*, 669 F.3d 1, 3 (1st Cir. 2011)).   While there is no prescribed formula, "[i]t is

generally sufficient that an indictment set forth the offense in the words of the statute itself,"

provided that the statutory language is "accompanied with such a statement of the facts and

circumstances as will inform the accused of the specific offence, coming under the general

description, with which he is charged."   *Hamling v. United States*, 418 U.S. 87, 117-18 (1974)

(internal quotation omitted).

"[T]he government need not recite all of its evidence in the indictment."   *United States v.

Innamorati*, 996 F.2d 456, 477 (1st Cir. 1993).   Accordingly, a motion to dismiss is not "an

occasion to force the government to defend the sufficiency of its evidence to be marshalled in

support of proving the charged offense."   *United States v. Rodriguez-Rivera*, 918 F.3d 32, 35

(1st Cir. 2019).   Rather, courts entertaining a motion to dismiss an indictment must "take the facts alleged in the indictment as true, mindful that the question is not whether the government has presented enough evidence to support the charge, but solely whether the allegations in the indictment are sufficient to apprise the defendant of the charged offense."   *United States v. Ngige*, 780 F.3d 497, 502 (1st Cir. 2015) (citation omitted).

## ARGUMENT

## I.   THE INDICTMENT ADEQUATELY ALLEGES COMMERCIAL BRIBERY IN VIOLATION OF MASSACHUSETTS STATE LAW.

Defendants both move to dismiss Counts One and Two, to the extent those counts allege as racketeering acts Defendants' violations of the Massachusetts commercial bribery statute, Massachusetts General Laws, chapter 271, section 39(a) (Section 39(a)).   *See* Docket Nos. 94, at 6-8; 92, at 19-20.   Quoting selectively from the Indictment, Defendants argue that Pullman's status as a state employee precludes application of Section 39(a), because the statute does not apply to the conduct of public officials.   *Id.*   However, as the Indictment repeatedly alleges, Pullman was also the President of SPAM – a private association – during the relevant period, and the racketeering acts in question are specifically limited to Pullman's conduct as SPAM President.

Racketeering Acts 1B, 1C, 2E, 2F, 3C, and 3D of Count Two of the Indictment (collectively, the Commercial Bribery Racketeering Acts) do not allege violations of the state commercial bribery statute in connection with Pullman's employment as a Trooper with the MSP.   Instead, Commercial Bribery Racketeering Acts 1B, 2E and 3C allege that Pullman, "**as an agent and fiduciary of SPAM**, in relation to [] transaction[s] and matter[s] concerning the business affairs of an employer, principal, and beneficiary, **to wit SPAM**, solicited, accepted,

and agreed to accept" three checks from Lynch and/or the Lobbying Firm "upon an agreement and understanding that such payment[s] would influence Pullman's conduct in violation of Section 39(a)..."   *See* Docket No. 17, at ¶¶ 72, 76, 80 (emphasis added).   Likewise, Commercial Bribery Racketeering Acts 1C, 2F and 3D allege that Lynch, "in relation to a transaction and matter concerning the business affairs of **an employer, principal, and beneficiary, to wit SPAM**, offered, gave, and agreed to give [Pullman], **as an agent and fiduciary of SPAM**" three checks, "with the intent to influence [Pullman's] conduct, in violation of Section 39(a)…"   *Id.*, ¶¶ 73, 77, 81 (emphasis added).

Specifically, the Indictment alleges that Lynch paid Pullman:

- $20,000 in exchange for Pullman causing SPAM – his employer and a private entity – to pay Lynch's firm $350,000 of the funds SPAM received from the Commonwealth in connection with the DOL Settlement.   *Id.*, ¶¶ 26-37, 72, 73.

- $5,000 in exchange for Pullman – in his capacity as President of SPAM – directing Company A to hire Lynch's firm in connection with its bid to sell its product to the Commonwealth.   *Id.*, ¶¶ 38-47, 76, 77.

- $5,000 in exchange for Pullman – in his capacity as President of SPAM – directing Company B to hire Lynch's firm in connection with its bid to sell its product to the Commonwealth.   *Id.*, ¶¶ 48-53, 80, 81.

Because the Indictment alleges that Lynch made the three payments to Pullman identified in the Commercial Bribery Racketeering Acts with the understanding that those payments would influence Pullman's conduct as the President of SPAM, it states offenses in violation of Section 39(a) and the Commercial Bribery Racketeering Acts survive dismissal.[2]   *See, e.g.*,

---

[2] Elsewhere the Indictment does allege that Pullman was an employee of the MSP, and that Defendants conspired to deprive the Commonwealth of its right of honest services of Pullman through bribes and kickbacks.   *See* Docket No. 17, ¶¶ 14, 66(a), 71, 87, 89.   However, the Commercial Bribery Racketeering Acts are limited to Pullman's conduct as SPAM President.

*Commonwealth v. Benoit*, 347 Mass. 1, 4 (1965); *Matter of Extradition of Lui*, 939 F.Supp.2d

934, 948 (D. Mass. 1996).

## II.  THE INDICTMENT ADEQUATELY ALLEGES WIRE FRAUD AND HONEST SERVICES WIRE FRAUD.

The Indictment charges Defendants with conspiring to commit and committing wire

fraud under both the deprivation of money or property concept of 18 U.S.C. § 1343 and the theft

of honest services concept of 18 U.S.C. §1346.   The elements of wire fraud under either statute

in the First Circuit are as follows:

(1) There was a scheme, substantially as charged in the indictment, to defraud, to obtain money or property by means of false or fraudulent pretenses, or to deprive another of the intangible right of honest services;

(2) The scheme to defraud involved the misrepresentation or concealment of a material fact or matter, or the scheme to obtain money or property by means of false or fraudulent pretenses or to deprive another of the intangible right of honest services involved a false statement, assertion, half-truth or knowing concealment concerning a material fact or matter;

(3) Defendants knowingly and willfully participated in this scheme with the intent to defraud; and

(4) For the purpose of executing the scheme or in furtherance of the scheme, Defendants caused an interstate or foreign wire communication to be used, or it was reasonably foreseeable that for the purpose of executing the scheme or in furtherance of the scheme, an interstate or foreign wire communication would be used, on or about the date alleged.

*2019 Revisions to Pattern Criminal Jury Instructions for the District Courts of the First Circuit*,

Updated 6/24/19 by Chief District Judge Nancy Torresen, District of Maine, § 4.18.1343.

While recent cases have elucidated what the government is required to *prove* vis-à-vis these

elements, the wire fraud statute and *pleading* requirements for wire fraud do not extend as far as

Defendants argue in their motions.   Because the Indictment adequately alleges wire fraud under both 18 U.S.C. §§ 1343 and 1346, the Court should not dismiss the fraud counts.

**A.  The Indictment Adequately Alleges Wire Fraud.**

Defendants both claim that Counts Four through Seven do not properly allege a scheme or artifice to defraud, in that the Indictment does not allege affirmative misrepresentations or properly allege concealment of material facts.   Docket Nos. 92, at 9-11; 94, at 17-19.   Pullman also seeks dismissal of the wire fraud counts based on his claims that they fail to allege that the object of the scheme to defraud was the victim's loss, and that they fail to allege materiality. Docket No. 92, at 11-13.   Because the Indictment alleges the essential elements of wire fraud, all of Defendants' claims fail.

**1.  Counts Four through Seven allege a scheme or artifice to defraud.**

As Pullman notes, for wire fraud "[t]he government must allege a scheme or artifice to defraud the victim of money, property, or honest services."   Docket No. 92, at 9.   That is exactly what Counts Four through Seven of the Indictment allege: Defendants "devised and intend[ed] to devise a scheme and artifice to defraud" the victims of "money and property" (Counts Five through Seven) or "their right of honest services of Pullman" (Count Four). Docket No. 17, ¶¶ 89, 91, 93.   The Indictment further alleges that Defendants' scheme to defraud was conducted through "bribes and kickbacks" (Count Four) and "by means of materially false and fraudulent pretenses, representations, and promises" (Counts Five through Seven).   *Id.*   Nothing more is required to properly allege a scheme to defraud.

Both Defendants claim that the Indictment failed to allege that affirmative misrepresentations were made as part of the scheme to defraud.   However, the term "defraud"

8

means "to deceive another in order to obtain money or property by misrepresenting *or concealing* a material fact." *Pattern Criminal Jury Instructions for the District Courts of the First Circuit*, § 4.18.1343 (emphasis added). Moreover, the term "false or fraudulent pretenses" means "any false statements or assertions that concern a material aspect of the matter in question, that were either known to be untrue when made or made with reckless indifference to their truth and that were made with the intent to defraud. They include actual, direct false statements as well as half-truths and *the knowing concealment of facts*." *Id.* (emphasis added); *see also 2019 Revisions to Pattern Criminal Jury Instructions for the District Courts of the First Circuit*, Updated 6/24/19 by Chief District Judge Nancy Torresen, District of Maine, § 4.18.1343.

The Indictment alleges multiple material misrepresentations, half-truths, and omissions, as well as multiple acts of concealment in furtherance of the fraud scheme sufficient to withstand Defendants' motions. Specifically, it alleges:

- With respect to Count Four, Defendants negotiated the DOL Settlement whereby the Commonwealth agreed to pay SPAM $350,000 for expenses incurred in connection with the settlement, but Pullman "knowingly and fraudulently concealed the $20,000 bribe and kickback from SPAM, the Commonwealth and the Membership." *Id.*, ¶ 34; *see also id.*, ¶ 35-36 (specific examples of concealment). In addition, Lynch paid Pullman the $20,000 in the form of a personal check made payable to Pullman's wife, and falsely classified the source payment in the Lobbying Firm's books and records. *Id.*, ¶¶ 32, 33.

- With respect to Count Five, Pullman encouraged Company A to hire the Lobbying Firm because Lynch was "a true expert in the state of Mass procurement process," but did not disclose to Company A that Lynch would pay him a bribe and kickback if Company A hired the Lobbying Firm. *Id.*, ¶¶ 41, 42, 47. Lynch paid Pullman $5,000 in form of a check and falsely classified the payment as a "commission expense" in the Lobbying Firm's books and records. *Id.*, ¶ 46. In addition, Defendants "purposely concealed the Lobbying Firm's payment to Pullman" from Company A, SPAM, and the Membership. *Id.*, ¶ 47.

9

- With respect to Counts Six and Seven, Pullman directed Company B to hire the Lobbying Firm but did not disclose to Company B that Lynch would pay him a bribe and kickback if Company B hired the Lobbying Firm. *Id.*, ¶¶ 49, 53. Lynch paid Pullman $5,000 in form of a personal check, and falsely classified the source payment as a payment to "Boston Consulting Group" for a "consulting fee" in the Lobbying Firm's books and records. *Id.*, ¶ 52. In addition, Defendants "purposely concealed the Lobbying Firm's payment to Pullman" from Company B, SPAM, and the Membership. *Id.*, ¶ 53.

Even if the Court finds that the Indictment alleged only material omissions or half-truths, as opposed to outright misrepresentations, it survives Defendants' motions because such allegations clearly state a cause of action under the fraud statutes in the First Circuit. *See, e.g., Pattern Criminal Jury Instructions for the District Courts of the First Circuit*, § 4.18.1343.

Lynch's assertion that the government must allege a duty to disclose with respect to Companies A and B (Counts Five through Seven) if the fraud is based on material non-disclosures is not supported by her citation to *United States v. Milovanovic*, 678 F.3d 713, 721 (9th Cir. 2012), in which the Ninth Circuit held that breach of a fiduciary duty is a requirement of an *honest services* wire fraud prosecution. Because the Indictment alleges wire fraud under a *property* theory with respect to Companies A and B (the only charges Lynch challenges in this argument), *Milovanovic* is not instructive.[3]

Moreover, multiple courts have held that there is no strict requirement for wire (or mail) fraud under a property theory that the government prove that Defendants had a duty to disclose those material facts they are charged with concealing. *See, e.g., Sonneberg v. United States*

---

[3]In fact, the Indictment does allege with respect to the honest services wire fraud (Count 4) that Pullman "owed a fiduciary duty and a duty of honest services to SPAM, the Membership, and the Commonwealth to perform his job and official duties free from fraud, deceit, and self-enrichment and to refrain from accepting, or agreeing to accept bribes and kickbacks." Docket No. 17, ¶ 14.

2003 WL 1798982 (3d Cir., Apr. 4, 2003) (proof of duty to disclose not required for mail and wire fraud convictions in light of "substantial precedent establishing that duty to disclose is not always a required element of common-law fraud when there has been a material non-disclosure"); *United States v. Colton*, 231 F.3d 890, 898-900 (4th Cir. 2000) ("although the existence of an independent disclosure duty 'is relevant and an ingredient' in some fraud prosecutions, such a duty is 'not an essential in all such cases.'") (citations omitted); *United States v. Keplinger*, 776 F.2d 678, 697-98 (7th Cir. 1985) ("It requires no extended discussion of authority to demonstrate that omissions or concealment of material information can constitute fraud or concealment of material information can constitute fraud cognizable under the mail fraud statute, without proof of a duty to disclose the information pursuant to a specific statute or regulation."); *United States v. Allen,* 554 F.2d 398, 410 (10th Cir.1977) ("While the existence of a fiduciary duty is relevant and an ingredient in some mail fraud prosecutions . . . it is not essential in all such cases.").

Even where a duty to disclose is required, an Indictment need not allege the duty and the duty need not be a formal fiduciary duty. *See, e.g., United States v. Hoffman*, 2014 WL 3589563, n.24 (E.D. La. July 18, 2014) (denying motion to dismiss indictment for failure to allege duty to disclose).   In fact, the "duty to disclose can also arise in a situation where a defendant makes partial or ambiguous statements that require further disclosure in order to avoid being misleading." *United States v. Autori,* 212 F.3d 105, 119 (2d Cir. 2000).   Clearly Pullman's statements to Companies A and B touting the benefits of hiring Lynch and the Lobbying Firm required the disclosure of Defendants' secret bribe and kickback scheme so as not to be misleading.   *See United States v. Carpenter*, 781 F.3d 599, 620 (1st Cir. 2015)

11

(without deciding whether affirmative duty to disclose is required under theory of fraud by omissions, approving District Court's holding: "[a]rguing that the defendant omitted material information necessary to make the affirmative statements not misleading did not transform the case from one of affirmative misrepresentations to a case of misrepresentation solely by reason of omission.").

The allegations of the Indictment go well beyond what is required at this stage of the proceedings, and whether the government can *prove* a scheme to defraud – as opposed to a non-criminal deception described in the cases Pullman cites in support of his motion – is not properly before the Court on a motion to dismiss the Indictment.   *See* Docket No. 92, at 10 (citing *United States v. Takhalov*, 827 F.3d 1307, 1315-16 (11th Cir. 2016), *United States v. Shellef*, 507 F.3d 82, 108 (2d Cir. 2007), and *United States v. Star*, 816 F.3d 94, 98 (2d Cir. 1987)).[4]   As the Indictment makes plain, with regards to the fraud against Company A and B, this is not a case of a silent, passive failure to disclose a fact that Defendants had a duty to disclose.   *Cf. Takhalov*, 827 F.3d at 1310.   Instead, as the Indictment alleges, Pullman directed Companies A and B to Lynch and her Lobbying Firm but concealed the bribery and kickback scheme from Companies A and B (as well as SPAM, the Membership and the IRS).

---

[4] Unlike the Indictment in *Shellef*, the present Indictment clearly alleges that Companies A and B did not receive the benefit of their bargain in hiring the Lobbying Firm.   Company A paid the Lobbying Firm $20,000 and Company B paid the Lobbying Firm $138,000 for work the firm purportedly performed for them.   But the Lobbying Firm used $5,000 of Company A's funds and $5,000 of Company B's funds to pay bribes and kickbacks to Pullman, in exchange for Pullman having directed the companies to hire the Lobbying Firm.   Had there not been an illicit relationship between Defendants, Companies A and B would have paid the Lobbying Firm less. Similarly, the Commonwealth overpaid SPAM's expenses in the amount of the $20,000 bribe and kickback Lynch paid to Pullman after her firm received the $350,000 payment purportedly for expenses.

Defendants' arguments conflate the requirements of proof at trial with the requirements of an indictment to detail allegations.   "The allegations of an indictment are presumed to be true for the purposes of assessing whether an indictment is sufficient to withstand a motion to dismiss, and inquiry into whether the government can prove its case at trial is inappropriate at this stage."  *United States v. Dunbar*, 367 F.Supp.2d 59, 60 (D. Mass. 2005) (citing *Boyce Motor Lines, Inc. v. United States,* 342 U.S. 337, 343 n.16 (1952)).   Because the Indictment adequately alleges a scheme to defraud, Defendants' requests for dismissal of Counts Four through Seven fail.

### 2.   Counts Four through Seven allege materiality.

Pullman's claim that Counts Five through Seven of the Indictment do not allege materiality falls entirely flat in the face of the actual charging language of the counts.   *See* Docket No. 17, ¶¶ 92, 93 (". . . by means of ***materially*** false and fraudulent pretenses, representations, and promises . . .") (emphasis added).   While not required, the Indictment also alleges facts supporting materiality as to Counts Five through Seven.   *Id.*, ¶¶ 47, 53 (Companies A and B "would not have paid the Lobbying Firm" had they "known about the illicit arrangement between" Defendants).   Whether the government can prove materiality – the issue in the *Takhlov* case cited by Pullman – is not properly before the Court on a motion to dismiss.

Count Four, alleging wire fraud under an honest services theory in relation to the DOL Settlement, does not allege materiality in its actual charging language.[5]   However, the failure of an indictment to allege materiality is not fatal because "an allegation of materiality can be

---

[5] In an abundance of caution, the government intends to seek a Superseding Indictment to include an allegation of materiality in Count Four, before the end of July 2021.

inferred from use of the word fraud in the indictment." *United States v. Klein*, 476 F.3d 111, 113-14 (2d Cir. 2007); *see also U.S. v. Keleher*, 2020 WL 7043948 (D.P.R. Dec. 1, 2020) (same, citing *Klein*). Moreover, there are not grounds for dismissal where, as here, an indictment contains factual allegations that support the inference of materiality. *United States v. Solomon*, 273 F.3d 1108, 2001 WL 1131955, *2 (5th Cir. 2001) (indictment alleging specific facts warranting inference of materiality was sufficient, noting "the law does not compel 'a ritual of words'") (citations omitted); *United States v. McAuliffe*, 490 F.3d 526, 531-32 (6th Cir. 2007) (indictment more than adequately alleges elements of materiality and intent to defraud while not using those specific words). Specifically, the Indictment alleges that "[t]he Commonwealth would not have engaged in negotiations with [Defendants], and would not have agreed to pay SPAM $350,000 for expenses, had it been aware that [Pullman] was going to receive a $20,000 bribe and kickback from Lynch." Docket No. 17, ¶ 37. Accordingly, Count Four also survives dismissal. *See, e.g., United States v. White*, 2004 WL 2612017, *12 (E.D. Pa. Oct. 29, 2004) (although honest services wire fraud count did not allege materiality, indictment sufficiently alleged facts that were material).

### 3. The Indictment need not allege that the object of the scheme was the victim's loss.

Finally, relying on the recent *Kelly v. United States*, 140 S. Ct. 1565 (2020) decision, Pullman claims Counts Four and Five do not allege that the object of Defendants' scheme was the victim's loss. Docket No. 92, at 11-12. But Count Four alleges an honest services fraud, *not* a property fraud, and by its very terms, *Kelly* does not apply. 140 S. Ct. at 1572 ("Save for bribes or kickbacks (not at issue here), a state or local official's fraudulent schemes violate [18 U.S.C. §1343] only when, again, they are for obtaining money or property."). Further, Count

Five specifically alleges that the object of Defendants' scheme was the victim's loss – *i.e.*, Defendants devised "a scheme and artifice to defraud and for ***obtaining money and property from Company A***."   Docket No. 17, ¶ 91 (emphasis added).[6]   Whether the government can prove this allegation – the actual question considered in *Kelly* – is not appropriately considered on a motion to dismiss the Indictment.

The government further notes that this case is critically distinct from *Kelly*, because the loss to the victim (Company A in Count Five) is not "only an incidental byproduct of the scheme."   140 S. Ct. at 1573.   In *Kelly,* the defendants' scheme was to reallocate access lanes on the George Washington Bridge.   *Id.*   Here, Defendants' scheme was literally to obtain money and property from Company A.   Docket No. 17, ¶ 91.   In *Kelly*, the labor costs were incidental to the defendants achieving their goal.   *Kelly*, 140 S. Ct. at 1573-74.   Here, the money Company A paid Defendants based on their material misrepresentations and omissions was the crux of the crime charged in the Indictment, not merely an "incidental byproduct" of the scheme to defraud.   Accordingly, *Kelly* does not support dismissal of Count Five.

Finally, contrary to Defendants' claims, the government is not required to prove actual monetary harm or unjust enrichment for a wire fraud conviction.   *United States v. Jordan*, 112 F.3d 14, 19 (1st Cir. 1997).   In fact, "[i]t is not necessary to establish that the intended victim was actually defrauded."   *Pattern Criminal Jury Instructions for the District Courts of the First Circuit*, § 4.18.1343 (quoting *United States v. Allard*, 926 F.2d 1237, 1242 (1st Cir. 1991) (citations omitted)).   "What is required is that 'an articulable harm befall [the victim] as a result

---

[6] Although Pullman inexplicably did not move to dismiss Counts Six and Seven based on his *Kelly* argument, those counts likewise allege that the object of the scheme was to obtain money from Company B.   Docket No. 17, ¶ 93.

of the defendant's activities, or some gainful use must be intended by the [defendant], whether or not this use is profitable in the economic sense.'"   *Jordan*, 112 F.3d at 19 (quoting *United States v. Czubinski*, 106 F.3d 1069, 1074–75 (1st Cir. 1997)).[7]

### B.  The Indictment Adequately Alleges Honest Services Wire Fraud.

The honest services fraud statute defines a "scheme or artifice to defraud" as including a "scheme or artifice to deprive another of the intangible right of honest services."   18 U.S.C. § 1346.   In *Skilling v. United States*, 561 U.S. 358, 407 (2010), the Supreme Court held that § 1346 applies to "offenders who, in violation of a fiduciary duty, participated in bribery or kickback schemes."   The honest services fraud statute, as explained by the Supreme Court in *Skilling*, includes bribery and kickback schemes involving private sector employees.   *United States v. Sidoo*, 468 F.Supp.2d 428, 444 (D. Mass. 2020) (citing *United States v. Bryant*, 655 F.3d 232, 245 (3d Cir. 2011)).   Defendants both claim that dismissal is warranted because the Indictment does not adequately allege a bribery or kickback scheme.   Docket Nos. 92, at 13-15; 94, at 10-17.   Pullman also claims the Indictment does not adequately allege a fiduciary duty. Docket No. 92, at 15-17.   All of Defendants' claims lack merit.

### 1.  The Indictment adequately alleges a bribery and kickback scheme.

The Indictment alleges no less than eight times that Lynch's payment of $20,000 to Pullman after he negotiated the DOL Settlement agreement, and after he paid the Lobbying Firm the entire $350,000 that the Commonwealth paid to SPAM for expenses purportedly incurred in connection with the settlement, constituted a bribe and kickback.   Docket No. 17, ¶¶ 34, 35, 36,

---

[7] Although not required to plead or prove actual harm, the government notes that, at the very least, the Commonwealth and SPAM, and Companies A and B, overpaid the Lobbying Firm by the amounts of the bribes and kickbacks that Lynch paid to Pullman.

37, 66(a), 71, 87, 89.   The Indictment further alleges that Pullman agreed to accept the $20,000

"upon an agreement and understanding that such payment would influence [Pullman's] conduct"

and that Lynch agreed to pay the $20,000 "with the intent to influence [Pullman's] conduct".   *Id.*,

¶¶ 72, 72.   Nothing more is required of the Indictment.   *See, e.g., United States v. Seminerio*,

2010 WL 3341887, *6 (S.D.N.Y. Aug. 20, 2010) (indictment need not "utter the magic words

'*quid pro quo*' or even 'bribe' or 'bribe receiving,'" where defendant was charged with receiving

stream of "corrupt payments" in connection with, and with intent to be influenced in, his actions

as Assemblyman).

Pullman's attempt to liken this case to *McDonnell v. United States*, 136 S. Ct. 2355

(2016) (Docket No. 92, at 15-17) and Lynch's citations to cases which charge public officials

with depriving the public of their honest services (Docket No. 94, at 14-16) fall flat because

Defendants are not charged with depriving the citizens of Massachusetts of their right to

Pullman's honest services as an MSP trooper.   Instead, Defendants were charged with depriving

Pullman's employers – the Commonwealth and SPAM – of Pullman's honest services as an

employee, through bribes and kickbacks.   The government anticipates that other employees of

the Commonwealth will testify that they would not have engaged in negotiations with

Defendants, and would not have agreed to pay SPAM $350,000 for expenses, had they been

aware that Pullman was going to receive a $20,000 bribe and kickback from Lynch.   Further,

Lynch's claim that the Indictment must allege that the payment "impacted Pullman's his [sic]

decision-making or the performance of his duties" has been specifically rejected by the First

Circuit.   *United States v. McDonough*, 727 F.3d 143, 159-60 (1st Cir. 2013) (approving jury

instruction stating government does not have to establish that public official would not have taken official action at issue without charged payments).

Finally, Lynch's assertion that the Indictment must allege that the scheme caused Pullman to take some act to the detriment of the Commonwealth or SPAM is unsupported by any precedent.   In fact, there is no requirement that an employer be harmed *financially* by an honest-services fraud scheme, and neither is there a bar to liability in the event it financially benefitted.  As the name implies, honest services fraud deprives an employer of the "intangible right to [the] honest services" of its employees.   18 U.S.C. § 1346.   Thus, as the Supreme Court noted in *Skilling*, in describing the development of the "honest services" doctrine: "Unlike fraud in which the victim's loss of money or property supplied the defendant's gain, with one the mirror image of the other, the honest services theory targeted corruption that lacked similar symmetry."   561 U.S. at 400.   "*Even if the scheme occasioned a money or property gain for the betrayed party*, courts reasoned, actionable harm lay in the denial of that party's right to the offender's 'honest services.'"   *Id*. (emphasis added).   Likewise, "after *Skilling*, Section 1346 requires a Defendant to act in exchange for a bribe or kickback, but whether such actions benefited or harmed the employer who enjoyed a right to the honest services of its employee, is irrelevant."  *United States v. Tanner*, 2018 WL 1737235, at *6 (S.D.N.Y. Feb. 23, 2018), *aff'd*, 942 F.3d 60, 65 (2d Cir. 2019); *see also United States v. Black*, 530 F.3d 596, 600 (7th Cir. 2008) (rejecting proposition that gain must "be at the expense of the persons (or other entities) to whom the defendants owed their honest services" as "a no harm-no foul argument"), *vacated and remanded on other grounds*, 561 U.S. 465 (2010); *United States v. Sorich*, 523 U.S. 702, 709–10 (7th Cir. 2008) ("In the case of a successful scheme, the [entity to whom the duty of honest

services is owed] is deprived of its servants' . . . honest services *no matter who receives the proceeds*.") (internal quotation omitted; emphasis added).   What matters is whether, notwithstanding any financial gain, the employer viewed the scheme as material—and that is a question of fact for the jury.   *United States v. Rybicki*, 354 F.3d 124, 145-46 (2d Cir. 2003) (noting that "actual or intended economic or pecuniary harm to the victim need not be established.   The only intent that need be proven in an honest services fraud is the intent to deprive another of the intangible right of honest services.") (citation, internal quotation marks and alteration omitted).

As alleged in the Indictment, Pullman convinced the Commonwealth to pay SPAM $350,000 for expenses purportedly incurred in connection with the DOL Settlement, and then directed SPAM to pay the entire $350,000 to the Lobbying Firm.   In exchange, Lynch paid Pullman $20,000.   Whether Defendants possessed the requisite corrupt intent to make this a bribe and kickback that satisfies *Skilling* is an issue of fact for the jury, s*ee, e.g., United States v. DeMizio,* No. 08-cr-336, 2012 WL 1020045, at *10 (E.D.N.Y. Mar. 26, 2012), but for now the honest services fraud charges stand.

### 2.   The Indictment adequately alleges a fiduciary relationship.

Pullman admits, as he must, that the Indictment alleges that Pullman owed a fiduciary duty and duty of honest services to SPAM, the Membership, and the Commonwealth.   Docket No. 92, at 15 (quoting Docket No. 17, ¶ 14).   However, Pullman claims – by selectively quoting the Indictment – that the charging document does not sufficiently allege the nature and scope of those duties.   *Id.*   In fact, a complete recitation of the relevant paragraph demonstrates that the Indictment alleges both the source and scope of Pullman's duties in detail:

19

> [Pullman] first joined the MSP as a trooper in approximately 1987 and was the President of SPAM from approximately 2012 until on or about September 28, 2018.   Prior to becoming President, from approximately 2008 until 2012, [Pullman] was SPAM's Treasurer.   As a law enforcement officer and the President of SPAM, [Pullman] owed a fiduciary duty and a duty of honest services to SPAM, the Membership, and the Commonwealth to perform his job and official duties free from fraud, deceit, and self-enrichment and to refrain from accepting, or agreeing to accept bribes and kickbacks.

Docket No. 17, ¶ 14.   The Indictment makes crystal clear that Pullman's employment as a trooper is the source of his duties to the Commonwealth, and his employment as President of SPAM is the source of his duties to SPAM and the Membership.   The "existence of a fiduciary relationship" between an employee and employer is "beyond dispute," and the violation of that duty through the employee's participation in a bribery or kickback scheme is exactly within the core of actions criminalized by the honest services fraud statute.   *See Skilling*, 561 U.S. at 407 n.41.   Accordingly, Pullman's argument for dismissal of the honest services fraud allegations on this basis fails.

### 3.   The Honest Services Fraud Statute Is Not Vague As Applied In This Case.

In addition to attacking the honest services fraud allegations in the Indictment, Lynch relies on several dissenting opinions (including Justice Scalia's dissent in *Skilling*) for her argument that Section 1346 is unconstitutionally vague, even in light of *Skilling*.   She further claims that *Skilling* was wrongly decided.   Finally, she claims that Section 1346 is vague as applied in this case.   Because the Supreme Court in *Skilling* held that, "[i]nterpreted to encompass only bribery and kickback schemes, [Section 1346] is not unconstitutionally vague," 561 U.S. at 412, and because there is no legal support (dissenting opinions aside) for the

argument that *Skilling* was wrongly decided, the only challenge to the statute that the Court must consider is whether Section 1346 is unconstitutionally vague as applied in this case.

As set forth above, the Indictment clearly alleges that Defendants schemes to defraud and to deprive SPAM, the Membership and the Commonwealth of their right of honest services of Pullman through bribes and kickbacks, and specifically that Lynch paid Pullman $20,000 in return for him negotiating the DOL Settlement to include the $350,000 "reimbursement" and causing SPAM to pay the Lobbying Firm $350,000.   This allegation of a *quid pro quo* by an employee falls directly into the core of honest services fraud, as the Supreme Court specifically outlined in *Skilling*.   Lynch can therefore not tenably complain that she lacked notice that her conduct could support an honest-services fraud prosecution.   *Cf. Skilling*, 561 U.S. at 407 (holding that "[a]lthough some applications of the pre-*McNally* honest services doctrine occasioned disagreement among the Courts of Appeals," §1346 was not facially void-for-vagueness because "these decisions do not cloud the doctrine's solid core . . . .").

## III.   COUNT THREE IS NOT DUPLICITOUS.

Finally, Pullman's claim that Count Three is duplicitous because it charges "conspiracy to commit honest services wire fraud and conspiracy to commit wire fraud in the same count" ignores both the actual charging language of the Indictment and black letter law on conspiracy and duplicity.   In fact, Count Three charges Defendants with conspiracy in violation of 18 U.S.C. § 1349.   *See* Docket No. 17, ¶ 87.   That the single conspiracy in violation of a single statute had two objects – *i.e.,* wire fraud and honest services wire fraud – does not render Count Three duplicitous.

Although it is well established that an indictment may not "join[ ], in a single count, two or more distinct offenses," *United States v. Prieto*, 812 F.3d 6, 11 (1st Cir. 2016), it is equally well established that "[t]he allegation in a single count of a conspiracy to commit several crimes is not duplicitous, for [t]he conspiracy is the crime, and that is one, however diverse its objects." *Braverman v. United States*, 317 U.S. 49, 54 (1942) (quotations and citations omitted).   That wire fraud and honest services wire fraud are separate and distinct offenses is irrelevant, because Count Three does not charge the substantive offenses of wire fraud and honest services wire fraud.   Instead, Count Three charges the offense of conspiracy, with wire fraud and honest services wire fraud as its objects.   It is well established that 18 U.S.C. § 1349 conspiracies with multiple criminal objects are not duplicitous.   *See, e.g., United States v. Francois*, 2017 WL 3208724 (S.D. Fl., July 14, 2017) (rejecting duplicity challenge to 18 U.S.C. §1349 count alleging conspiracy to commit health care fraud and mail fraud); *United States v. Tahir*, 2016 WL 795884 (E.D. Mich., Feb. 29, 2016) (same); *United States v. Harris*, 2010 WL 4962981 (N.D. Ga., Oct. 22, 2010) (rejecting duplicity challenge to 18 U.S.C. §1349 count alleging conspiracy to commit securities fraud and wire fraud); *United States v. Cholak*, 2019 WL 7567199 (6th Cir. 2019) (upholding district court's rejection of duplicity challenge to 18 U.S.C. §1349 count alleging conspiracy to commit health care fraud and to accept kickbacks). Accordingly, Pullman's duplicity claim is without merit.

## CONCLUSION

An indictment is sufficient if it contains all of the essential elements of the offenses charged, fairly informs the defendants of the charges against which they must defend and equips the defendants to make a later double jeopardy argument.   The Indictment satisfies those standards.   Accordingly, Defendants' motions to dismiss should be denied.

Respectfully submitted

NATHANIEL R. MENDELL,
ACTING UNITED STATES ATTORNEY

Date:   May 7, 2021                          By:   */s/Kristina E. Barclay*
                                                   KRISTINA E. BARCLAY
                                                   NEIL J. GALLAGHER, JR.
                                                   Assistant U.S. Attorneys


## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).


Date: May 7, 2021                            */s/Kristina E. Barclay*
                                             Kristina E. Barclay
                                             Assistant United States Attorney